FILED

-PS-O-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

06 NOV -2 AM 8: 45

U.S. DISTRICT COURT
W.D.N.Y.-BUFFALO

WADE ANTHONY DRUMMOND,

    Plaintiff,

                      06-CV-0255F

    -v-
                      MEMORANDUM and ORDER

STATE OF NEW YORK SHERIFF DEPARTMENT,
BARRY VERTS, Superintendent Wayne County Jail,
C. CARR, Lieutenant,
CHARLES MULE, Facility Director Buffalo Federal Detention Facility,
PETER SMITH, Special Agent,
DEPARTMENT OF HOMELAND SECURITY,
BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Defendants.

## INTRODUCTION

Plaintiff, Wade Anthony Drummond, a detainee in the custody of the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("BICE"), pursuant to a final order of removal who is currently detained at the Perry County (Alabama) Correctional Center awaiting a determination of the United States Court of Appeals, Second Circuit on his petition for review of the Board of Immigrations Appeals final order of removal, has filed a *pro se* complaint and amended complaint seeking relief under 42 U.S.C. § 1983 (Docket Nos. 1 and 5) and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket Nos. 2 and 4). Plaintiff, in a somewhat confusing manner, claims that the defendants, "State of New York Sheriff['s] Department;" Barry Verts, Superintendent Wayne County Jail; C. Carr, Lieutenant; Charles Mule, Facility Director

Buffalo Federal Detention Facility; Peter Smith, Special Agent, DHS/BICE; DHS; and BICE[1] violated his rights when he was transferred from the Buffalo Federal Detention Facility to the Wayne County (New York) Jail pending removal and a determination by the Court of Appeals on his petition for review and was subject to fingerprinting at the Jail and housed with inmates or detainees who were charged with or convicted of criminal offenses. He claims that the transfer and fingerprinting by a non-federal entity was a violation of his Fifth and Fourteenth Amendment rights to due process and that his being housed with others charged with or convicted of criminal offenses was a violation of his Eighth Amendment right against cruel and unusual punishment. Plaintiff also alleges that the Wayne County Jail advised the Buffalo Federal Correctional Facility that plaintiff had been disruptive and requested that plaintiff be removed from the Jail, and that upon plaintiff's return to the Buffalo Federal Detention Facility he was unlawfully charged and disciplined for disruptive conduct and sentenced to 10 days in the Special Housing Unit ("SHU"), and that when he was released from SHU he was placed in "Special Segregation Unit A2" for an additional 60 days without notice or a hearing.

For the reasons discussed below, plaintiff's request to proceed as a poor person is granted and the complaint is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B).

---

[1] On March 1, 2003, the Immigration and Naturalization Service was reconstituted as the Bureau of Immigration and Customs Enforcement ("BICE") and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security. *Jian Hui Shao v. Board of Immigration Appeals*, --- F.3d ----, 2006 WL 2921939 (2d Cir., October 12, 2006).

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis*. Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

In evaluating the complaint, the Court must accept as true all factual allegations and must draw all inferences in plaintiff's favor. *See King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Based on its evaluation of the complaint, the Court finds that plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) because the Court either lacks jurisdiction over them or they fail to state a claim upon which relief may be granted.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, but to the extent he claims constitutional violations by federal officials the Court will construe those claims to be claims brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971). *See Tavarez v. Reno*, 54 F.3d 109 (2d Cir. 1995). "To state a valid claim under 42 U.S.C. § 1983 or *Bivens*, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law [(§ 1983) or federal law (*Bivens*)], and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)); *see also Tavarez*, 54 F.3d at 110 (*Bivens* requires a plaintiff to allege that a defendant acted under color of federal law to deprive plaintiff of a constitutional right.).

## A. CLAIMS AGAINST NEW YORK STATE, DHS AND BICE

### 1. New York State

Plaintiff appears to name "The New York State Sheriff (sic) Department" as a defendant in this matter. To the extent plaintiff names the State as a defendant, any and all claims against the State must be dismissed. The Eleventh Amendment bars federal court claims against states, absent their consent to such suit or an express statutory waiver of immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984). Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought. *Alabama v. Pugh*, 438 U.S. 781 (1978) ( per curiam). Accordingly, insofar as plaintiff is suing the State of New York, any and all claims pled against the State must be dismissed in their entirety.

2. DHS and BICE

As noted, plaintiff names both DHS and BICE as defendants and alleges that they violated his constitutional rights when they transferred him pending removal and a determination of his petition for review by the Second Circuit to the Wayne County Jail. The basis of this claim appears to be that DHS and BICE had no authority to transfer him to a County Jail, did not receive the Second Circuit's permission to transfer him inasmuch as there was a stay of removal in place pending determination of the petition fo review and caused him to be housed with individuals charged with or convicted of criminal offenses. Because both DHS, and one of its departments, BICE, are immune from suit plaintiff's claims against them must be dismissed.

As noted above, the Supreme Court in *Bivens*, 403 U.S. at 486, recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983. However, *Bivens* claims are available only against federal government officers in their individual capacities; the federal government itself and its agencies are immune from suit absent a waiver of sovereign immunity, *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994), and the Supreme Court has specifically declined to waive such immunity to allow a claim against a federal agency under *Bivens*, *id.* at 486. Accordingly, plaintiff's claims against DHS and BICE are dismissed with prejudice.

**B. Claims Relating to Transfer of Plaintiff and Place of Detention**

The complaint, as best the Court can discern, alleges that Wayne County Jail Superintendent Barry Verts, Lieutenant C. Carr, Charles Mule, Facility Director, Buffalo

5

Federal Detention Facility, and "Special Agent" Peter Smith of DHS violated plaintiff's constitutional rights when he was transferred to the Wayne County Jail by BICE while awaiting review of his order of removal by the Second Circuit, and that, as a result, he was fingerprinted at the Jail and placed in "criminal confinement" in violation of the Eighth Amendment's proscription against cruel and unusual punishment inasmuch as he was confined with persons charged with or convicted of criminal violations.

Section 236(a) of the Immigration and Naturalization Act (the "Act"), 8 U.S.C. § 236(a), grants the Attorney General the power to arrest and detain an alien pending a determination of whether the alien is to be removed from the United States. The Act also grants authority to the Attorney General to detain aliens pending decisions on removal, see 8 U.S.C. § § 1231(g)(1), 1226(c)(1), and, the place of detention is left to the discretion of the Attorney General. See 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); Ballesteros v. Ashcroft, 452 F.3d 1153 (10th Cir. 2006) ("The implementing statute gives DHS the authority to 'arrange for appropriate places of detention for aliens detained pending . . . a decision on removal.'" (citing 8 U.S.C. § 1231(g)(1)); Gandarillas-Zambrana v. BIA, 44 F.3d 1251, 1256 (4th Cir.1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); Rios-Berrios v. INS, 776 F.2d 859, 863 (9th Cir.1985) ( "We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attorney General to decide."); Sasso v. Milhollan, 735 F.Supp. 1045,

1046 (S.D.Fla.1990) (holding that the Attorney General has discretion over location of detention).

Because the Attorney General has the statutory authority and discretion to determine the place of detention pending a determination of removal, plaintiff has no basis for the claims alleged herein under either § 1983 of *Bivens* and, therefore, any all claims related to his transfer to and detention at the Wayne County Jail pending a determination by the Second Circuit on his petition for review must be dismissed.

### C. Due Process Claims Against Mule and Smith

The only remaining claim is the claim that Mule and Smith violated plaintiff's rights to due process when he claims he was unfairly charged and disciplined by "Mule and et al." (Complaint, ¶ H, "Fourth Claim," p. 7). Plaintiff alleges that he was returned to the Buffalo Federal Detention Facility because of complaints that he was disruptive at the Wayne County Jail and that upon his return he was charged with disrupting the orderly function of the Detention Facility in that Detention Facility officers had to pick him up from the Wayne County Jail and transport him back to the Facility. Plaintiff claims he was immediately placed in SHU and a hearing was held at which he was found guilty of a violation of "Code 299" and ordered to be confined to SHU for ten days. Upon release from SHU, plaintiff claims that he was immediately placed in "another Segregation Unit A2" for an additional 60 days without notice or hearing. (Complaint, ¶ H, Fourth Claim, pp. 7-9).

In order to determine whether plaintiff has stated a claim for a procedural due process violation, the Court must first determine " '(1) whether the plaintiff had a protected liberty interest in not being confined ⋯ and, if so, (2) whether the deprivation

7

of that liberty interest occurred without due process of law.' " *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997) (quoting *Bedoya*, 91 F.3d 349, 351-52 (2d Cir. 1996)). *See also Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (applying Sandin *v. Conner*, 515 U.S. 472 (1995) to inmate confined at federal detention facility). The Second Circuit has recognized that, after the Supreme Court's decision in *Sandin*, the court's determination of "whether the plaintiff had a protected liberty interest in not being confined" also requires a two-part analysis. *Sealey*, 116 F.3d at 51 (citing *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (per curiam)). A prisoner has a "liberty interest only if the deprivation ⋯ is atypical and significant and the state has created the liberty interest by statute or regulation." *Sealey*, 116 F.3d at 52.

The Court notes initially that plaintiff makes no allegation or reference to a DHS or BICE regulation that creates a liberty interest in not being confined outside of general population at the Buffalo Federal Correctional Facility. Assuming *arguendo* that whatever regulations are in place at the Buffalo Federal Detention Facility creates such a "liberty interest", compare *Tellier*, 280 F.3d at 81 (28 C.F.R. § 541.22,[2] which applies to correctional facilities under auspices of Bureau of Prisons, creates a liberty interest), *Muhammad v. Carlson*, 845 F.2d 175, 177-78 (8th Cir.1988) (stating in dicta, prior to *Sandin*, that Section 541.22-23 is "couched in 'unmistakably mandatory' language," and intimating that it would therefore give rise to a protectable liberty interest), *Maclean v. Secor*, 876 F.Supp. 695, 701-02 (E.D.Pa.1995) ("[Sections 541.22 and 541.15] are

---

[2]The complaint makes no reference to what regulation plaintiff is claiming creates a liberty interest in remaining in general population, and the Court makes no finding that 28 C.F.R. § 541.22 or some other regulation applicable to federal correctional institutions are applicable to disciplinary segregation at the Buffalo Federal Detention Facility or create a liberty interest..

8

sufficient to confer a liberty interest here...."), and *Turkmen v. Ashcroft*, 2006 WL 1662663, at *36 (E.D.N.Y., Jun 14, 2006) (In a case involving a challenge by aliens challenging their detention pending determination of their violations of immigration statutes, the Eastern District of New York noted that the Second Circuit clearly established in *Tellier*, 280 F.3d at 80-81, that assignment to the SHU at the Metropolitan Detention Center affected a protectable liberty interest created by Bureau of Prison regulations, see 28 C.F.R. § 5414.22), *with Hill v. Fleming*, 173 Fed.Appx. 664 (10th Cir. Apr. 4, 2006) (unpublished opinion) (it was not clearly established at time of prisoner's confinement that federal regulation governing housing of inmates in administrative detention provided prisoner with a "state-created" liberty interest, and, thus, officials were entitled to qualified immunity), *Jordan v. Federal Bureau of Prisons*, 2006 WL 2135513 (10th Cir., Jul 25, 2006) (regulation addressing reviews of inmates in administrative detention did not create any liberty interest triggering due process protections violated by prison officials), plaintiff's due process claims herein fail to state a claim on which relief can be granted because all that is alleged is that plaintiff was in SHU for 10 days and "Special Segregation Unit A2" for 60 days. Plaintiff's confinement in SHU for 10 days and another 60 days in Special Segregation does not set forth a claim that his confinement outside of the general population was in any way "atypical and significant" as required by *Sandin*.

The Second Circuit has explicitly avoided a "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v Richards*, 364 F. 3d 60, 64 (2d Cir. 2004) (citing *Sims v. Artuz*, 230 F.3d 14, 23 (2d

9

Cir.2000); *Colon v. Howard,* 215 F.3d 227, 234 (2d Cir.2000). "Instead, [their] cases establish the following guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. Where the plaintiff was confined for an intermediate duration--between 101 and 305 days--'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." (quoting *Colon v. Howard,* 215 F.3d at 232;*citing Sims,* 230 F.3d at 23 ("[W]e have characterized segregative sentences of 125-288 days as relatively long, and thus necessitating specific articulation of ... factual findings before the district court could properly term the confinement atypical or insignificant." (citations and internal quotation marks omitted)). "In those [intermediate duration] situations, a district court must 'make a fact-intensive inquiry' (citation omitted) examining 'the actual circumstances of SHU confinement' in the case before it without relying on its familiarity with SHU conditions in previous cases." *Palmer,* 364 F.3d at 64-65 (quoting *Kalwasinski v. Morse,* 201 F.3d 103, 106 (2d Cir.1999) (per curiam)). Generally, confinement of less than 101 days will not constitute an atypical and significant hardship unless "the conditions were more severe than ... normal SHU conditions that even relatively brief confinements under normal SHU conditions were in fact, atypical." *Palmer,* 364 F.3d at 65.

While periods of confinement of less than 101 days may, in certain circumstances, constitute an atypical and significant hardship where the record establishes that the conditions of confinement were more severe than the normal SHU conditions or were, in fact, atypical, *see Ortizv .McBride,* 323 F.3d 191, 195 & n. 1; *Colon,* 215 F.3d at 232 n. 5, plaintiff makes no allegations here that his confinement of a

10

total of 70 days (10 in SHU and 60 in Special Segregation) was in any way atypical and posed a significant hardship "in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.  See also Ortiz, 323 F.3d at 195 ("The conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of 'atypical and severe hardship' as required by Sandin"); Sealey, 197 F.3d at 586 ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." (citation omitted));  Colon, 215 F.3d at 230 (emphasizing that, in that case, "[t]he conditions were the normal conditions of SHU confinement in New York").

Accordingly, plaintiff's due process claims against Mule and Smith must be dismissed with prejudice because the complaint alleges nothing more than that he spent a total of 70 days in some type of administrative segregation.  Confinements of this duration, without more, do not state a claim that said confinement was "atypical and significant . . . in relation to the ordinary incidents of prison life." See Hanrahan v. Doling, 331 F.3d 93, 97-98 (2d Cir.2003) ("[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest.")

Additionally, the complaint and the records of the disciplinary charges and hearings attached to the complaint are barren of any allegations that Superintendent Mule and Special Agent Smith were in any way personally involved in the alleged due process violations.  A prerequisite for liability under a Bivens claim, like a claim under §

11

1983, is personal involvement by the defendants in the alleged constitutional deprivation. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986); *see also Olushina v. Gonzalez*, 2006 WL 2927158, at *2(E.D.N.Y., October 11, 2006) (noting that courts typically incorporate § 1983 law into Bivens actions) (citing *Tavarez*, 54 F.3d at 110). Such involvement on the part of a supervisory official may be shown in one of several ways:

> if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation.

*Sealey*, 116 F.3d at 51 (citing *Williams v. Smith*, 781 F.2d at 323-24).

In the instant complaint, plaintiff makes no allegations of any personal involvement in the alleged due process violation on the part of either Mule or Smith. In fact, he often refers to the "defendants" in a generic sense and does not allege specifically what each defendant did or did not do in relation to what he claims is a constitutional deprivation. *See Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim"). The extent of the allegations against Mule and Smith in relation to the due process claim is that "DHS/BICE Charles Mule et[,] al., knowingly or unlawfully charged and sanction[ed] plaintiff to {SHU]." (Complaint, ¶ H. Fourth Claim, p. 7). Because these claims fail to demonstrate Mule's or Smith's personal involvement in the alleged due process deprivation, the due process claim against them must be dismissed with prejudice.

## CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is granted and, for the reasons discussed above, the complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii). .

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

## ORDER

IT HEREBY IS ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the complaint is dismissed with prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

SO ORDERED.

DATED:   Buffalo, New York
         October 31, 2006

_____
JOHN T. ELFVIN
UNITED STATES DISTRICT JUDGE